**UNITED STATES of America**

v.

**Melvin Lee PHILLIPS, Sr.**

**Crim. A. No. 83–6–A.**

United States District Court,
M.D. Louisiana.

May 16, 1983.

Bradley C. Myers, Asst. U.S. Atty., Baton Rouge, La., for plaintiff.

Ralph E. Tyson, Baton Rouge, La., for defendant.

## MEMORANDUM OPINION

JOHN V. PARKER, Chief Judge.

After a trial before a jury, defendant was convicted on all three counts of a three count indictment. Defendant now files an "amended motion to suppress" evidence seized under a search warrant and also moves for post verdict judgment of acquittal under Rule 29(c), Fed.R.Crim.P., claiming that there is insufficient evidence to support a conviction on Count II.

Count I of the indictment charges defendant with possession of an unregistered sawed-off shotgun in violation of 26 U.S.C. § 5861(d); Count II charges defendant with possession of a firearm which had been made into a sawed-off shotgun without complying with the provisions of 26 U.S.C. § 5822, in violation of 26 U.S.C. § 5861(c); and Count III charges defendant with possession of a firearm by a convicted felon in violation of 18 U.S.C., App., § 1202(a)(1).

*The Motion to Suppress*

By pretrial motion, defendant moved to suppress the evidence (the shotgun) found and seized in a search of the defendant's apartment under a search warrant issued by the United States Magistrate on January 20, 1983. The warrant was issued predicated upon the affidavit of Special Agent Jesse Jones of the Alcohol, Tobacco and Firearms Bureau to which was attached an affidavit given to Special Agent Jones by the defendant's wife on January 20, 1983. Defendant attacked the search on the ground that there was not probable cause for issuance of the search warrant because Agent Jones had not verified the information prior to seeking the warrant and Mrs. Phillips was not known to him as a reliable informant. The United States Magistrate, after hearing oral argument, recommended that the motion be denied, citing *United States v. Copeland,* 538 F.2d 639 (5th Cir. 1976). The court approved the recommendation of the Magistrate.

This "amended" motion now challenges the validity of the search warrant based upon an unsworn statement made by Mrs. Phillips on March 25, 1983, to an assistant United States attorney and Special Agent Jones in which she contradicts her affidavit. She stated that she lied about her husband owning the firearm and that she herself put the firearm into the apartment. Counsel for defendant was informed of the statement and on April 2, 1983, about two weeks before the trial, was given a written summary of the unsworn, oral statement.

The government responds by asserting that the motion is untimely under Rule 12(b), Fed.R.Crim.P., which requires that a motion to suppress evidence be filed before trial, and urges that this motion has been waived under Rule 12(f). It is correct that plaintiff did not file a second motion to suppress the evidence following the making of Mrs. Phillips' second statement, but Rule 12(f) authorizes the court to grant relief from waiver and the court hereby does so and will consider the motion.

The defendant cites *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) for the proposition that where a false statement is knowingly included in a search warrant affidavit, the false statement must not be used to determine whether probable cause exists. The *Franks* case does support the proposition that defendant may challenge the affidavit supporting the warrant, but he must show a deliberate falsehood or reckless disregard for the truth by the affiant himself, not of any nongovernmental informant. 98 S.Ct. at 2684.

▪ A search warrant can be challenged only "through a showing that the *affiant* knowingly or with reckless disregard of the truth included a false statement in the affidavit ... It is not enough to show that the *informant* deliberately lied to an unsuspecting affiant." *United States v. Schauble,* 647 F.2d 113, 117 (10th Cir.1981).

▪ Here, all defendant has shown is that his wife gave one statement under oath implicating him in the making of this sawed-off shotgun, as well as its possession, and subsequently, shortly before his trial, gave a second unsworn statement contradicting her sworn statement and claiming that she herself placed the firearm in the

apartment. Defendant has made no showing that Mrs. Phillips' original sworn statement was false, much less that Special Agent Jones knowingly or with reckless disregard of the truth included a false statement in his affidavit. The "amended" motion to suppress is hereby DENIED.

*The Motion for Post-Verdict Judgment of Acquittal*

Count Two of the indictment charges the defendant with violating the provisions of the Gun Control Act of 1968 (codified as 26 U.S.C. §§ 5801 through 5872) alleging that the defendant knowingly and intentionally possessed a weapon made in violation of § 5822, thereby violating 26 U.S.C. § 5861(c). The court charged the jury that in order to prove the offense charged in Count Two, the government had to establish the following three essential elements: First, that the defendant at or about the time charged in the indictment possessed a shotgun with a barrel less than eighteen inches in length or an overall length of less than twenty-six inches; second, that this firearm was made into a sawed-off shotgun *in the United States;* and third, that the sawed-off shotgun was made without the filing of an application to make and register the firearm, the payment of a making tax, identification of the applicant, and approval to make and register the firearm, as required by Title 26, United States Code, Section 5822.

The basis of the defendant's motion for acquittal is the contention that the government offered no evidence that the weapon was made in violation of 26 U.S.C. § 5822, that is to say, that it was made *in the United States.* The government denies that the making of the weapon must occur in the United States.

The following sections of Title 26 have application to the question before the court:

26 U.S.C. § 5845 definitions.

For the purpose of this chapter—

(a) FIREARM.—The term "firearm" means [1] a shotgun having a barrel or barrels of less than 18 inches in length; [2] a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length . . .

(d) SHOTGUN.—The term "shotgun" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of projectiles (ball shot) or a single projectile for each pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed shotgun shell.

(i) MAKE.—The term "make", and the various derivatives of such word, shall include manufacturing (other than by one qualified to engage in such business under this chapter), putting together, altering, any combination of these, or otherwise producing a firearm.

Section 5821 of Title 26 of the United States Code levies a tax upon the "making" of a firearm and provides that the tax shall be paid "by the person making the firearm."

26 U.S.C. § 5822. Making—

No person shall make a firearm unless he has (a) filed with the Secretary a written application, in duplicate, to make and register the firearm on the form prescribed by the Secretary; (b) paid any tax payable on the making and such payment is evidenced by the proper stamp affixed to the original application form; (c) identified the firearm to be made in the application form in such manner as the Secretary may by regulations prescribe; (d) identified himself in the application form in such manner as the Secretary may by regulations prescribe, except that, if such person is an individual, the identification must include his fingerprints and his photograph; and (e) obtained the approval of the Secretary to make and register the firearm and the application form shows such approval. Applications shall be denied if the making or possession of the firearm would place

the person making the firearm in violation of law.

Section 5861(c) of Title 26 of the United States Code makes it "unlawful for any person ... to receive or possess a firearm in violation of the provisions of this chapter ...."

Count II of the indictment charges the defendant with possessing a firearm "made in violation of the provisions of § 5822." An analysis of § 5822 shows that it prohibits the making of any firearm unless the maker first files an application to make and register the firearm, pays the tax, identifies the firearm, identifies himself, and obtains approval of the Secretary to make and register the firearm.

In *United States v. Goodson,* 439 F.2d 1056 (5th Cir.1971), the court pointed out that the provisions of the former National Firearms Act did not constitute mere possession of a firearm as per se unlawful; one must possess a weapon not "made" in accordance with law and the "making" must occur in the United States. Although the former provisions have been redrafted and re-numbered in the Gun Control Act of 1968, the present statutes continue the same statutory scheme as that embodied in the statutes considered by the Fifth Circuit in *Goodson,* and that holding is clearly applicable to the statutory provisions now considered by this court.

■ A simple reading of Section 5822 clearly shows that it regulates the "making" of firearms, and it is apparent that the

"making" must occur in the United States in order to trigger the regulatory provisions. If the firearm is "made" at a place outside the United States, then clearly the maker cannot be required to secure a permit from and pay a tax to the Secretary of the Treasury of the United States prior to making the weapon. Under Section 5861(c) mere possession of a sawed-off shotgun is not illegal. It is only possession of a sawed-off shotgun which was "made" without complying with the regulatory provisions of Section 5822 that constitutes a violation of Section 5861(c). This court will not assume that the Congress has attempted to impose a tax upon every firearm "made" throughout the world without clear and unambiguous indication that such was congressional intent. Accordingly, the court concludes that proof that the weapon was "made" in the United States is an essential element of the offense charged.[1]

Defendant's motion for acquittal raises the question of the sufficiency of the evidence to support the conclusion that the evidence proved that the firearm was "made" in the United States. The test to be applied by a trial court in passing upon a motion for judgment of acquittal for insufficiency of the evidence is essentially the same as that applied by the Court of Appeals, that is to say, whether the relevant evidence, viewed in a light most favorable to the government, could be accepted by a reasonable minded jury as adequate and sufficient to support the conclusion of the

1. The court notes sua sponte that Count III of the indictment, charging that the defendant, a convicted felon, was in possession of a firearm in violation of 18 U.S.C.App. § 1202(a)(1), alleges that the defendant possessed a twelve gauge shotgun "which had been made into a sawed-off shotgun and made in violation of § 5822 ...." If "making" the firearm in violation of § 5822 is also an essential element of Count II, then the court should also consider the sufficiency of the evidence relative to Count III, despite the fact that the defendant has not addressed that count in his motion. Rule 29 requires such review if necessary to prevent a miscarriage of justice. *Ansley v. United States,* 135 F.2d 207 (5th Cir.1943). The definitions of the two statutes, however, are different. Under 18 U.S.C.App. § 1202(c)(3), the

term "firearm" is defined as any weapon which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; and it specifically provides, "Such term shall include any handgun, rifle or shotgun." Thus, Section 1202(a)(1) prohibits a convicted felon from possessing any firearm that has traveled in interstate commerce, and does not restrict it to any firearm "made" in violation of § 5822. The allegation included in Count III that the firearm was made in violation of § 5822 is mere surplusage to be ignored, since it does not relate to any essential element of the offense charged and defendant has suffered no prejudice by reason of that allegation having been made. *United States v. Strauss,* 283 F.2d 155, 159 (5th Cir.1960).

defendant's guilt beyond a reasonable doubt. *United States v. Varkonyi*, 611 F.2d 84, 85 (5th Cir.1980), *cert. denied* 446 U.S. 945, 100 S.Ct. 2173, 64 L.Ed.2d 801 (1980); *United States v. Evans*, 572 F.2d 455, 476 (5th Cir.1978), *cert. denied sub. nom.* 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978).

 The evidence offered by the government relative to this shotgun is simply that it was shipped to a K-Mart store in Texas in 1973. How it got from the K-Mart store in 1973 to the possession of the defendant in 1983 and how and where it was "made" into a sawed-off shotgun is totally and completely unexplained.[2] While the jury may draw inferences from established facts, a verdict may not be based upon mere speculation. *Roesch, Inc. v. Star Cooler Corp.*, 671 F.2d 1168 (8th Cir.1982). Although the government proved that the gun was in the United States ten years ago, it is speculative to leap from the fact to an assumption that this weapon was sawed-off ("made") somewhere in the United States. The defendant's guilt has not been established beyond a reasonable doubt. Defendant's motion for judgment of acquittal as to Count II is hereby GRANTED.

Cullen Landis, Landis & Gregory, Houston, Tex., for plaintiffs.

James Ware, McLeod, Alexander, Powel & Apffel, Galveston, Tex., and King Waters, Vinson & Elkins, Houston, Tex., for defendants.

---

**2.** Although the affidavit given to Special Agent Jones declares that she observed the defendant saw off the barrel in Baton Rouge, Louisiana,

Mrs. Phillips did not testify, so that information was not before the jury.